IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

WILLIAM CURLESS,

        Plaintiff,

v.                                           Case No. 17-1198-JWB

NANCY A. BERRYHILL, *Acting
Commissioner of Social Security*,

        Defendant.

**MEMORANDUM AND ORDER**

This is an action reviewing the final decision of the Commissioner of Social Security denying plaintiff disability benefits. The matter has been fully briefed by the parties and the court is prepared to rule. (Docs. 11, 12, 13.) The Commissioner's decision is AFFIRMED for the reasons set forth herein.

**I. General Legal Standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence that a reasonable mind might accept to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them

substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id.* at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work and determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); 404.1520(f), (g). If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 124 S. Ct. 376, 379-80 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id.*; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

## II.    History of Case

Plaintiff filed applications for both Disability Insurance Benefits and Supplemental Security Income, alleging a disability beginning October 20, 2011, when he was 43 years old. Plaintiff later amended the onset date to January 9, 2014. (R. at 40.) On July 20, 2016, Administrative Law Judge (ALJ) Alison K. Brookins issued a written decision finding Plaintiff was not disabled within the meaning of the Social Security Act. (R. at 16-29.)

The ALJ determined at step two that Plaintiff suffered from the following severe impairments: depression and post-traumatic stress disorder. (R. at 19.) At step three, the ALJ determined that Plaintiff does not have an impairment that meets or exceeds the severity of a listed impairment. (R. at 19-21.) In reaching that conclusion, the ALJ found Plaintiff had only mild restrictions in activities of daily living and moderate difficulties in both social functioning and concentration, persistence, and pace. (R. at 20.)

At step four, the ALJ first determined Plaintiff's Residual Functional Capacity (RFC) as follows:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: in that the claimant can understand and remember simple and some intermediate level ([SVP]3 and SVP4) instructions, and that he has the ability to focus and persist at simple routine and intermediate level tasks for an 8-hour day, but would have difficulty with more complex and detailed tasks, particularly those requiring sustained concentration for more than 2 hours without a break. He should not work with the public, and can have occasional co-worker contact.

(R. at 21.) In reaching these conclusions, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms he alleged (including lack of motivation, feelings of being overwhelmed, tearfulness, and others) but his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical and other evidence. (R. at 22.) The ALJ noted Plaintiff's history of treatment for depression and anxiety, but found the symptoms were responsive to and well-controlled by medication and therapy. (*Id.*)

The ALJ also reviewed the various medical source and other opinions in the record, giving great weigh to the opinions of a state agency medical consultant (Edna P. Toubes-Klingler, M.D.) and state agency psychological consultant (Charles Fantz, Ph.D.). Dr. Toubes-Klingler opined that Plaintiff had no severe physical impairments. Dr. Fantz's opinions concerning Plaintiff's mental functional abilities were incorporated into the above RFC. The ALJ also considered medical source statements by Plaintiff's nurse practitioner (Patricia Harris, APRN) and psychiatrist (Rex Lear, MD), as well as opinions of Plaintiff's case management worker (Steve Passeri) and parole officer (Vicki LeFever), and an opinion provided by Plaintiff's sister (Deborah Johnson). As to each opinion, the ALJ stated the amount of weight she gave to it and the basis for doing so. The ALJ went on to find at step four that, given the above RFC and Plaintiff's circumstances, he was not able to perform his past relevant work. (R. at 27.)

Finally, at step five, the ALJ found Plaintiff retained the ability to perform jobs that exist in substantial numbers in the national economy, including Kitchen Helper (DOT[1] 318.687-010), Hand Packager (DOT 920.587-018), and Laundry Laborer (DOT 361.687-018), all of which are unskilled, medium exertional occupations at the SVP2 level. (R. at 28.) The ALJ thus concluded

---

[1] Dictionary of Occupational Titles.

Plaintiff was not disabled within the meaning of the Act. Plaintiff's request for review of the decision was denied by the Appeals Council, leaving the ALJ's ruling as the final decision of the Commissioner. (R. at 5.)

## III. Analysis

Plaintiff contends the ALJ committed two errors in denying his claim. First, he argues the ALJ erred by failing to provide valid reasons for discounting Plaintiff's statements about his mental health limitations. (Doc. 11 at 17.) Second, he argues the ALJ failed to properly weigh the opinions concerning Plaintiff's mental functioning. (*Id*. at 23.)

### A. Evaluation of Plaintiff's Statements

Plaintiff argues the ALJ failed to properly assess his statements concerning mental health limitations. He contends the ALJ relied heavily on normal exam findings while ignoring contrary findings. For example, Plaintiff cites treatment notes showing he had symptoms associated with PTSD and anxiety in 2014 and 2015, and he points out that his symptoms waxed and waned and required changes in medication. (Doc. 11 at 19-21.) He argues the ALJ improperly discounted or ignored such matters in assessing the severity and extent of his symptoms, contrary to SSR 16-3P, 2017 WL 5180304 (Oct. 25, 2017.)[2]

SSR 16-3P provides guidance about how the Commissioner evaluates statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims. SSR 16-3P, 2017 WL 5180304, *2. It requires a two-step process, beginning with a determination of whether the individual has a medically determinable impairment that could reasonably be expected to cause the alleged symptoms. (*Id.*) If the individual has such an impairment, the ALJ evaluates the

---

[2] SSR 16-3P applies to decisions on or after March 28, 2016, and therefore applies to the ALJ's ruling. (*Id.*) Among other things, SSR 16-3P phased out use of the term "credibility," emphasizing that evaluation of subjective symptoms "is not an examination of an individual's character." (*Id.* at *2.)

intensity and persistence of the individual's symptoms and determines the extent to which they limit the individual's ability to perform work-related activities. (*Id.* at *4.)

All relevant evidence is considered at step two. Objective medical evidence is a useful indicator, and the ALJ "must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record." (*Id.* at *5.) The ALJ will not disregard an individual's statements about symptoms, however, solely because the objective medical evidence does not wholly substantiate them; that is only one factor. (*Id.*) Other relevant evidence includes statements from the Plaintiff, medical sources, and any other sources with information about the symptoms. An individual may make statements to medical or other sources or to the Commissioner, and the ALJ must consider whether the statements are consistent with the record. Information about symptoms recorded by medical sources is relevant and must be considered. "Very often, the individual has provided … information to the medical source, and the information may be compared with the individual's other statements in the case record." (*Id.* at *7.) Records of treatment and its success or failure are considered. The ALJ is directed to consider medical opinions under established regulatory standards. (*Id.*) Medical evidence from non-treating sources must also be considered, as is evidence from other sources, with the ALJ to evaluate the consistency of such evidence with the individual's statements and other evidence. As part of the analysis, the ALJ should consider any evidence concerning factors spelled out in the regulations: daily activities; location, duration, frequency and intensity of symptoms; precipitating and aggravating factors; medication type, dosage, effectiveness, and side effects; treatment received; other measures used to relieve symptoms; and other relevant factors. (*Id.* at *7.)

The ALJ followed these standards in evaluating Plaintiff's statements about the severity of his symptoms and their impact on his ability to work. The opinion includes an extensive review of Plaintiff's statements to medical providers, a comparison of those statements with medical findings and other evidence, consideration of Plaintiff's medications and their effects, review of Plaintiff's daily activities, and evaluation of the various opinions concerning Plaintiff's symptoms. Among other things, the ALJ acknowledged Plaintiff's history of treatment for depression and anxiety, but found his psychological symptoms "are responsive to, and generally well-controlled by psychotropic medications and therapy." (R. at 22.) That finding was supported by substantial evidence, including Plaintiff's statements to medical providers and others, treatment notes, and mental status examination results, all of which were set forth and discussed by the ALJ in her opinion. (R. at 22-25.)

Plaintiff faults the ALJ for not citing contrary indications from treatment notes and other sources. An ALJ is required to consider all relevant evidence in the record, but is not required to discuss every piece of evidence in the opinion. *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ must discuss the uncontroverted evidence she chooses not to rely upon, as well as "significantly probative evidence" she rejects. *Id.* There is no indication the ALJ ignored significantly probative evidence in reviewing Plaintiff's claim. The opinion indicates the ALJ considered the evidence Plaintiff refers to, but that she went on to find and discuss a number of "discrepancies [that] diminish the persuasiveness of the claimant's subjective complaints and alleged limitations." (R. at 25.) For example, the ALJ discussed Plaintiff's most recent visit with Patricia Harris, APRN, in which Plaintiff reported intermittent episodes of depression and dealing with anxiety and asserted that he had a note from his therapist stating he was having concentration problems. (R. at 24.) Harris indicated the note was unsigned, and that a mental status exam showed

Plaintiff to be alert and oriented; and although Plaintiff focused on a need for medication to improve concentration, his memory and concentration were intact and he had no deficits in cognitive functioning. (*Id.*) Plaintiff's "medication dosage was decreased, and he was given a 'good' prognosis with continued treatment…." (R. at 24-25.) The ALJ acknowledged there was conflicting evidence concerning Plaintiff's limitations, and she properly considered and weighed all of the evidence in reaching her conclusion.

An ALJ is required to give specific reasons supported by evidence in the record for his or her findings concerning the intensity, persistence, and limiting effects of the Plaintiff's symptoms. *Cf. Keyes-Zachary v. Astrue*, 695 F.3d 1156, 166-67 (10th Cir. 2012) (citation omitted) ("[A] credibility determination 'must contain specific reasons for the finding on credibility, supported by the evidence in the case record' and be 'sufficiently specific' to inform subsequent reviewers of both the weight the ALJ gave to a claimant's statements and the reasons for that weight."). The ALJ did so here with findings supported by substantial evidence in the record.

### B. ALJ's Weighing of Opinions

Plaintiff contends the ALJ improperly discounted the opinions of Plaintiff's case worker (Passari) and parole officer (LeFever) based on a misrepresentation of these opinions and reliance upon non-existent inconsistencies. (Doc. 11 at 24.) He argues the ALJ improperly "plucked only portions" of the opinions to create inconsistencies: "For example, the ALJ cited the case manager's opinion that [Plaintiff] would need support to live independently, but stated that in contrast, the parole officer indicated that [Plaintiff] was capable of completing tasks as scheduled, that he is able to learn and follow tasks, and that at times his anxiety and lack of self-confidence lead him to be immobile and unable to focus." (Doc. 11 at 25.) Plaintiff contends these statement "do not contradict each other" and, in any event, that the ALJ "mispresented the opinions." (*Id.*)

The ALJ noted these two sources are not considered acceptable medical sources under the regulations, and she properly considered the opinions under SSR 06-3P, 2006 WL 2329939 (Aug. 9, 2002). The ALJ ultimately gave both opinions partial weight. She did not say the two opinions were completely contradictory, but only indicated there was some "contrast" between them. While Passari's opinion suggested Plaintiff had severe limitations, LeFever's opinion was nuanced, indicating Plaintiff was capable of learning to follow tasks and completing them as scheduled. The ALJ had a substantial basis for finding that the opinions presented contrasting viewpoints of Plaintiff's limitations. Moreover, the ALJ went on to cite Plaintiff's statement in February 2015 indicating he no longer needed case management services, when he told a social worker that "I don't use Steve [Passari] that much anyway." This suggested to the ALJ "that the claimant's treatment and medication management was allowing him to function more independently." (R. at 26.) Substantial evidence supports that conclusion by the ALJ. Plaintiff argues the ALJ misrepresented the treatment note, because it also stated that Plaintiff was "extremely anxious" and "inquired about no longer having case management services." (R. at 604.) But the note itself continued: "After listening to this therapist explain the reason for this [Plaintiff] stated 'well, I am ok with it because I don't use Steve that much anyway.'" (*Id.*) The ALJ's finding was not a misrepresentation, but was a fair inference drawn from Plaintiff's own statement indicating he did not use case management services to a great extent. The court finds no error in the ALJ's assessment of these opinions.

Finally, Plaintiff's brief asserts that "the ALJ erred by adopting the non-examining State agency opinion." (Doc. 11 at 26.) This contention is more or less unexplained but appears to be premised on the fact that the state agency consultants were not examining sources. (*Id.*) But the ALJ cited and applied correctly the legal standards governing evaluation of these opinions. The

ALJ committed no error in giving great weight to the opinion of Dr. Fantz, for example, a psychologist whose opinion was found to be well explained, supported by a review of Plaintiff's records, and consistent with the overall record. (R. at 25.) *See* 96-6P, 1996 WL 374180, at *3 (July 2, 1996) ("In appropriate circumstances, opinions from State agency medical and psychological consultants may be entitled to greater weight than the opinions of treating or examining sources.).

In sum, the ALJ applied the correct legal standards and made findings supported by substantial evidence. Under the governing standard of review, this court may not reweigh the evidence or substitute its judgment for that of the Commissioner. *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005).

**IV. Conclusion**

The decision of the Commissioner denying disability benefits is AFFIRMED.

IT IS SO ORDERED this 31st day of May, 2018.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE